```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                         NASHVILLE DIVISION
```

AMANDA REED,                       )
                                   )
    Plaintiff,                     )    Civil No. 3:16-CV-822
                                   )
V.                                 )
                                   )
NANCY A. BERRYHILL[1], Acting      )    **MEMORANDUM OPINION AND ORDER**
Commissioner of Social Security,   )
                                   )
    Defendant.                     )

****

Amanda Reed brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI)[2]. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision as it is supported by substantial evidence.

**I.**

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The matter has been assigned to the undersigned, sitting by designation.

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to

the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**II.**

Plaintiff filed her applications for DIB under Title II and for SSI under Title XVI on July 30, 2010 (Tr. 267-73, 274-81). She stated that she was born in 1981 and alleged that she became disabled beginning February 11, 2010 (Tr. 267). In her Disability Report, she alleged disability due to deaf in left ear, partial facial paralysis, and poor balance (Tr. 295). Plaintiff's claims were denied initially and on reconsideration and Plaintiff then requested a hearing on the matter (Tr. 156). Administrative Law Judge ("ALJ") Renee S. Andrews-Turner conducted a hearing, but thereafter denied Plaintiff's claim in a decision dated March 13, 2015 (Tr. 11-24). On April 6, 2016, the Appeals Council declined Plaintiff's request for review of his decision (Tr. 1-3). Thus, ALJ Andrew-Turner's decision became the final agency action for purposes of judicial review. This appeal followed and the case is ripe for review pursuant to 42 U.S.C. § 405(g)[3].

**III.**

---

[3] The matter is before the Court on Plaintiff's motion for judgment on the record (DEs 13 and 20). The acting commissioner has responded (DE 20). Plaintiff has not filed a reply.

3

In her motion before the Court, Plaintiff raises several issues regarding the soundness of ALJ Andrews-Turner's decision who, after careful consideration of the entire record, found that Plaintiff had severe impairments that included headaches, lumbar peritoneal shunt status post left acoustic neuroma[4], and major depressive disorder (Tr. 14). However, the ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1 (Tr. 14). The ALJ determined that Plaintiff retained the residual functional capacity to:

> lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand or walk for 6 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; can do occasional stooping, kneeling, crouching and crawling; should avoid noisy environments, heights, and hazards; can understand remember and carry out simple instructions; only occasional interaction with the general public, coworkers and supervisors; and can adapt to infrequent change in the workplace

---

[4] "Acoustic neuroma, also known as vestibular schwannoma, is a noncancerous and usually slow-growing tumor that develops on the main (vestibular) nerve leading from your inner ear to your brain." "Acoustic Neuroma," Mayo University, available at http://www.mayoclinic.org/diseases-conditions/acoustic-neuroma/basics/definition/con-20023851 (visited 1/9/18). As a result of this, Plaintiff received a shunt. "A shunt is a hollow tube surgically placed in the brain (or occasionally in the spine) to help drain cerebrospinal fluid and redirect it to another location in the body where it can be reabsorbed." "Shunt Procedure," Johns Hopkins Medicine; available at http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/cerebral-fluid/procedures/shunts.html (visited 1/9/18).

(Tr. 15-16).

The ALJ found that Plaintiff's impairments would not preclude her from performing her former work as a fast food worker (Tr. 23). Consequently, the ALJ found that Plaintiff was not disabled at the fourth step in the sequential analysis process (Tr. 23).

Plaintiff first argues that the ALJ erred because vocational expert testimony stated that with unscheduled breaks she could not work. However, this argument relies on a limitation that was not found by the ALJ. The vocational expert's response to a hypothetical question that is not based on the residual functional capacity is of no consequence.

At the fourth step of the sequential evaluation, the ALJ determines whether or not Plaintiff can perform her past relevant work. If she can, she is not disabled. See 20 C.F.R § 404.1520 (sequential evaluation). Although a vocational expert witness is not required at the fourth step of the sequential evaluation process, the ALJ in this case properly used vocational expert testimony to assist in making a decision concerning Plaintiff's ability to perform her past relevant work as provided for by the regulations. See 20 C.F.R. § 404.1560(b).

The ALJ asked the vocational expert witness to assume an individual of Plaintiff's age, education and work experience with Plaintiff's functional limitations (Tr. 45-47). In response to

5

the ALJ's hypothetical question, the vocational expert testified that she could work as a fast food worker (Tr. 47).

Plaintiff contends that the hypothetical question posed to the vocational expert by counsel included breaks and absenteeism, and that the responses indicated that Plaintiff could not work if this was the case (Tr. 51-52). The ALJ and Plaintiff's counsel may question the vocational expert with a hypothetical question containing a possible RFC that was not adopted, but this does not show an error in considering the record. *See Crum v. Comm'r of Soc. Sec.*, No. 15-3244, 2016 WL 4578357, at *7-8 (6th Cir. Sept. 2, 2016) ("[U]se of a treating physician's opinion in a hypothetical by no means establishes that the ALJ accepted the treating physician's opinion, much less gave it controlling weight. Allowing the ALJ to ask questions to reach an informed conclusion should be encouraged, not used against the ALJ on appeal.").

Because the ALJ's hypothetical question assumed only those limitations which were consistent with the record, it was sufficient. The hypothetical question presented to the vocational expert need only include those restrictions the ALJ found consistent with the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the

ALJ incorporated all of the functional limitations that she deemed credible."); *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) (citations omitted).

Plaintiff goes on to argue that the opinions of various physicians support disability. However, the ALJ properly evaluated all of the medical evidence in accordance with Sixth Circuit case law, as well as SSA's regulations and policies (Tr. 17-23).

Plaintiff's argument is based in large part on an allegation that continued symptoms from her neuroma and shunt procedure cause headaches and other debilitating problems which render her disabled. She maintains that she is disabled due to residuals from this procedure.

Plaintiff had initial treatment which included two surgeries (Tr. 459-60, 78). However, the medical record actually shows that after Plaintiff's surgery her surgeons released her to resume work in September 2010 (Tr. 491). While subsequently she developed migraine headaches and had regular treatment for that condition, all objective testing (MRI and CT scans) of her head showed that this was not related to the shunt procedure or the neuroma (Tr. 591, 593, 632, 816). One complaint was actually due to a tooth problem (Tr. 612). In fact, the neurologists repeatedly advised her that there was no abnormality attributable to her shunt

7

procedure at several follow-up examinations (Tr. 630-34, 772, 775). While Plaintiff did have migraine headaches, and indeed these were a "severe" impairment under the ALJ's findings, the ALJ's decision shows that medical evidence was lacking to support Plaintiff's contentions of continuing symptoms based on her surgery. These findings are firmly based on the statements from her neurologists and neurosurgeons.

It could be argued that Plaintiff was disabled during the period surrounding her initial treatment and surgery in 2010. However, disability for SSA purposes requires a 12 month period during which there was an inability to work. See 20 C.F.R. § 404.1505 (basic definition of disability). Plaintiff alleged that she became disabled in February 2010. Plaintiff was released back to work by her doctors during this 12 month period, in September 2010 (Tr. 491). This "return to work" statement provides substantial evidence to support the ALJ's decision.

Turning to Plaintiff's specific complaints, Plaintiff argues that the ALJ erred in evaluating the medical source statement provided by a consulting doctor, W. R. Stauffer, M.D. This doctor examined Plaintiff on a consultative basis on October 22, 2014, after the ALJ requested this examination (Tr. 21, 797). Dr. Stauffer noted Plaintiff's medical history, complaints, and medication use (Tr. 797-98). Specific to Plaintiff's main

8

complaints, the neurological portion of the examination revealed normal mental status, normal gait and station, and some seventh nerve palsy on the left (Tr. 799). She had intact (5/5) motor and grip strength throughout (Tr. 799). She could perform fine and gross hand movement and had intact sensation (Tr. 799). She could squat half way and walk on heels and toes (Tr. 799).

In the medical source statement portion of the record, the doctor noted that Plaintiff did have some balance problems, but, taking this and the objective and subjective evidence into account, the doctor described a fairly capable work ability (Tr. 799). This included occasionally lifting up to 50 pounds, and frequently lifting 25 pounds (Tr. 799). Dr. Stauffer opined that Plaintiff could stand, walk, or sit for six hours a day (Tr. 799). She should avoid climbing ladders, ropes, or scaffolds due to balance problems and could perform occasional postural maneuvers (Tr. 799).

Plaintiff complains that the ALJ did not adequately account for balance problems in evaluating this doctor's opinion, but fails to realize that the doctor's opinion accounts for balance problems. The doctor stated that Plaintiff had balance problems but, taking into account her problems she could still perform a significant amount of work (Tr. 799). She was only restricted in the ability to climb (Tr. 799). The ALJ's residual functional capacity echoed

this concern by finding that Plaintiff could not work at heights and around hazards – a different phrasing for the same limitation (Tr. 16).

The ALJ properly gave Dr. Stauffer's opinion great weight as it was consistent with the records (Tr. 22). While it is correct that the doctor did not have the entire medical record, as Plaintiff points out (Tr. 799), the ALJ specifically found that the opinion was "in harmony with the weight of the evidence" including the treatment notes (Tr. 22).

Plaintiff argues that the ALJ failed to adequately consider opinions on her mental limitations provided at another consultative examination. This examination by B. Kathryn Galbraith, Ph.D., was also provided by SSA upon the ALJ's request (Tr. 786-96). However the ALJ did not give significant weight to all of the report, as there had not been a 12 month period that supported all of the doctor's suggestions (Tr. 22, 793). This is a reasonable analysis.

Plaintiff next contends that the ALJ did not take into account side effects from medications, and appears to hint at fatigue as one of these side effects. The problem with this argument is that Plaintiff cites to no evidence from a doctor stating that she has side effects that could not be relieved by altering medications. Indeed, Plaintiff listed no side effects on an SSA form (Tr. 322).

Plaintiff's nurse practitioner listed dizziness as a side effect on a form (Tr. 544). However, other reports appear to show no side effects (Tr. 657, 660, 663, 666, 669, 672, 675, 678, 681, 684), apart from an alteration of a medication (Tr. 707). In sum, the record did not support significant side effects. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians."); *Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) (alleged medication side effects of drowsiness, nausea, and blurred vision "not documented in the record").

Plaintiff next asserts that the ALJ erred in giving great weight to a non-examining doctor, Linda Caldwell, M.D., because the doctor only reviewed medical records from on and before August 2012 (Tr. 548). However, this was the period of time encompassing the first two years of Plaintiff's claim. Furthermore, the ALJ was aware of this (Tr. 19). The doctor considered that Plaintiff's migraines were not related to the shunt, and that evidence remained true throughout the relevant period as noted above, including as late as June 2014 (Tr. 772 ("I do not feel that this patient's complaints are secondary to shunt malfunction/infection and I do

not feel that a shunt tap would be of benefit. this was discussed with the neurosurgery team on call who is in agreement.")).

The ALJ could give Dr. Caldwell's opinion "great" weight, having found that it was consistent with the record as a whole (Tr. 22). As was done here, before an "ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record . . . In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 2016 WL 124140, at *7 (6th Cir. Jan. 12, 2016) ("Kepke misconstrues the Court's holding in *Blackley v. Commissioner of Social Security* as providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record. 581 F.3d 399, 409 (6th Cir.2009)") (citations omitted).

Even though Plaintiff cites the records from Plaintiff's neurologists as supportive of her claims, the evidence from the neurologists casts doubt on the allegations. As the ALJ noted, the Vanderbilt neurosurgeon believed that the headaches should be treated medically since the diagnostic criteria was not remarkable as to causation (Tr. 18). The ALJ further noted that other records

from the Vanderbilt neurosurgery clinic showed that Plaintiff was doing much better in 2013 (Tr. 18).

The records support the ALJ on this point. For example, on November 27, 2012, Noel Tulipan, M.D., stated that Plaintiff had complained of headaches and low back pain but was nevertheless "completely stable" and there were no acute problems (Tr. 630). The doctor believed that Plaintiff's headaches should be treated medically (Tr. 630). In April 2013, Reid Thompson, M.D., stated that her MRI was very stable and "[c]linically she is doing well" (Tr. 633). On March 26, 2014, Dr. Tulipan, stated that Plaintiff had complained of ear issues but "she has done well clinically. I tried to reassure her that scan looks good." (Tr. 631). In April 2014, Dr. Thompson stated that Plaintiff had some difficulty "at times" with balance and dizziness" but his impression was that she was "very stable" with regards to her neuroma surgery (Tr. 632).

In June 2014 Plaintiff had another normal CT examination of the head (Tr. 816). She went to the emergency room with a headache and concerns about her shunt, and the doctor discussed this with neurosurgeons and determined that the headache was not due to her shunt (Tr. 812). As the ALJ considered, recent evidence concerning Plaintiff's headaches showed that the frequency had diminished, as in June 2014 Plaintiff reported only one bad headache in a month (Tr. 19, 687).

13

In sum, substantial evidence supports the ALJ's determinations concerning the medical opinions. The records cited by the ALJ showed that Plaintiff recovered from her shunt procedure and that subsequent complaints were not attributed to this procedure by her neurologists.

IV.

The Court having found no legal error on the part of the ALJ and that her decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for judgment on the record (DEs 13 and 20) be, and the same hereby is, **DENIED**.

A separate judgment in conformity herewith shall this date be entered.

This the 25th day of January, 2018.

Sitting by Designation.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge